**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HERMAN COLLIER,<br><br>Plaintiff,<br><br>v.<br><br>DCH MONTCLAIR ACURA, *et al*.,<br><br>Defendants. | No. 25cv15973 (EP) (MAH)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

This case arises from a familiar problem: a used car not working as promised. Plaintiff Herman Collier, an Illinois resident, brings this action against Defendant DCH Montclair Acura ("DCH").[1] D.E. 16 ("Amended Complaint" or "Am. Compl."). Plaintiff's suit stems from his purchase of a black 2007 Porsche 911 (the "Vehicle") from DCH, which was delivered to him on April 16, 2025. *Id.* ¶ 30.

Plaintiff brings three claims against DCH, all stemming from DCH's alleged misrepresentation of the Vehicle: breach of contract (Count I), a violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.* (Count II), and rescission of contract claims (Count III). *Id.* at 6–9.

[1] Plaintiff also brought this suit against Westlake Financial Services ("Westlake"). Westlake has not appeared in this action, nor is there any indication that Westlake was served.

DCH moves to dismiss Counts II and III of the Amended Complaint. D.E. 23-1 ("Motion" or "Mot.").[2] Plaintiff opposes the Motion to Dismiss, D.E. 24 ("Opp'n"), and DCH replies, D.E. 25 ("Reply").

The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b). For the reasons explained below, the Court will **GRANT in part** and **DENY in part** the Motion.

## I. BACKGROUND

### A. Factual Background[3]

On or around April 1, 2025, DCH advertised the sale of the Vehicle online for the asking price of $28,780. Am. Compl. ¶¶ 7–10. While the asking price of the Vehicle was $28,780, the total amount financed between Plaintiff and Westlake amounted to $31,677.51. *Id.* ¶ 13.

Prior to the sale of the Vehicle, DCH had it serviced on March 13, 2025, and again on April 4, 2025. *Id.* ¶¶ 16–17. Plaintiff alleges that prior to the Vehicle's delivery on April 16, 2025, DCH drove the Vehicle for approximately 45 miles between the dates of March 13, 2025, and April 5, 2025. *Id.* ¶ 19.

On April 4, 2025, Plaintiff asked Lawrence Wineglass—a DCH sales manager—whether the Vehicle "was in running condition." *Id.* ¶ 20. Plaintiff added: "You said you took this car in and trust that the car has no major issues. I'm trusting you on that." D.E. 16-10 at 16. Wineglass replied, "I drove it both that day and last week. Im [sic] confident the car stands tall." Am. Compl.

[2] The Court refers to DCH's brief in support of its Motion as the Motion. The Notice of Motion is filed at D.E. 23.

[3] The facts in this section primarily derive from the Amended Complaint's well-pled factual allegations and the attachments thereto, which the Court presumes to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

¶¶ 21, 26. After Plaintiff explained he had never driven a Porsche and "hope[d] that [Wineglass] understood [his] issues," Wineglass replied, "[I]t's all about how they were cared for and serviced. . . . [T]his one the guy loved the car and didn't want to sell it." *Id.* ¶ 28.

Plaintiff purchased the Vehicle on April 5, 2025, *id.* ¶ 18, and it was delivered to Plaintiff on April 16, 2025, *id.* ¶ 30. That same day the Vehicle was delivered, Plaintiff informed Wineglass that it had an engine problem allegedly so severe that a Porsche dealer in Springfield, Illinois, cautioned Plaintiff that "the engine is bad and needs [to be] replaced." *Id.* ¶ 31; D.E. 16-10. Wineglass replied, "[W]e had a full work up done on the vehicle and were [sic] told nothing about a catastrophic engine issue. Can you send me a report of what your mechanic is saying is the issue. . . [I']m not in the office today I will pull a copy tomorrow when I return . . ." Am. Compl. ¶ 33 (alterations in original). The exhibits show that Plaintiff sent Wineglass the requested report the next day and reflect no response from DCH. D.E. 16-10 at 20–21. *See generally id.*

According to Plaintiff, DCH intentionally misrepresented the predelivery condition of the Vehicle to induce Plaintiff's business. *Id.* ¶¶ 37–40. Plaintiff alleges that DCH and its agents "engaged in an unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation against [P]laintiff." *Id.* ¶ 55. Consequently, Plaintiff allegedly suffered an "ascertainable loss of money or property." *Id.* ¶ 59.

For this conduct, Plaintiff brings three counts against Defendants. Count I is a breach of contract claim for Defendants allegedly "violat[ing] the contract by failing to perform obligations under the sales contract, and misrepresenting those obligations to [P]laintiff." *Id.* ¶ 46. Count II alleges that Defendants violated the NJCFA when they "knowingly concealed, suppressed or omitted a material fact from [P]laintiff with intent that [P]laintiff rely upon same." *Id.* ¶ 56. Count III asserts a claim for the "rescission of a contract," alleging that the Vehicle sale contract was

procured through fraud and should therefore be declared void, with DCH required to refund all amounts Plaintiff paid under the contract. *Id.* ¶¶ 67–68. In addition to the claims brought, Plaintiff seeks equitable relief, statutory treble damages, attorney's fees, and court costs. *Id.* ¶¶ 48, 63.

**B. Procedural History**

Plaintiff commenced this action in the Superior Court of New Jersey, Essex County, Law Division on September 2, 2025. D.E. 1-2. DCH removed the case to this Court on September 25, 2025, pursuant to 28 U.S.C. §§ 1441(a)-(c) and 1446. D.E. 1. The original complaint contained seven counts; following a round of pre-motion letters and a conference with the Court, Plaintiff filed the Amended Complaint, which asserts only Counts I, II, and III. The Motion is fully briefed and ready to be decided.

## II. LEGAL STANDARD

**A. Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) permits the dismissal of a case for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The reviewing court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and "determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The defendant bears the burden of showing that a plaintiff has failed to state a claim. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally, "[i]n deciding a Rule

12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In other words, when determining whether to dismiss a complaint, the Court does not need to accept as true allegations in a complaint that are directly contradicted by authenticated documents that the complaint relies on. *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1197 (3d Cir. 1993)).

**B. Federal Rule of Civil Procedure 9(b)**

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Rule 9(b) "has been interpreted to require that plaintiffs 'state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged' and 'plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (citation modified) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). Rule 9(b) applies to common law fraud claims and NJCFA claims sounding in fraud. *Clark v. Wyndham Hotels & Resorts*, No. 24-10836, 2025 WL 211538, at *2 (D.N.J. Jan. 16, 2025) (citing *Frederico*, 507 F.3d at 200).

## III. DISCUSSION

### A. Plaintiff States an NJCFA Claim (Count II)

Count II of the Amended Complaint is predicated on the NJCFA. The NJCFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J. Stat. Ann. § 56:8-2. To state a claim under the NJCFA, a plaintiff must allege: (1) an unlawful practice by the defendant; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss. *McCalley v. Samsung Elecs. Am., Inc.*, No. 07-2141, 2008 WL 878402, at *7 (D.N.J. Mar. 31, 2008).

The NJCFA recognizes three types of unlawful acts: (1) affirmative misrepresentations; (2) knowing omissions; and (3) regulation violations. *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 373 (D.N.J. Aug. 26, 2015). When interpreting the NJCFA, "courts have been instructed to 'be faithful to the Act's broad remedial purposes ... [and] construe the [Act] broadly, not in a crabbed fashion.'" *Valli v. Avis Budget Grp., Inc.*, No. 14-6072, 2017 WL 1956777, at *4 (D.N.J. May 10, 2017) (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)).

As explained below, the Amended Complaint supports Plaintiff's affirmative misrepresentation theory of liability. Therefore, the Court will **DENY** the Motion as to Count II.

*1. Affirmative misrepresentation*

Plaintiff adequately pleads the first category of unlawful acts—an affirmative misrepresentation. Under the NJCFA, an affirmative misrepresentation is a statement that is material to the transaction, factual rather than merely promotional, and alleged to be false. *Clifford v. Clifton Colfax Auto Mall, LLC*, No. A-2126-19, 2021 WL 416733, at *2 (N.J. Super. Ct. App. Div. Feb. 8, 2021) (citing *Gennari v. Weichert Co. Realtors*, 288 N.J. Super. 504, 535 (App. Div. 1996), *aff'd*, 148 N.J. 582 (1997)). A statement is material if a reasonable person would consider it important in deciding how to act, or if the speaker knows or has reason to know that the recipient is likely to regard it as important. *Id.* at *2–3. An affirmative misrepresentation may violate the NJCFA "even if unaccompanied by knowledge of its falsity or an intention to deceive." *Id.* at *2 (quoting *Monogram Credit Card Bank of Ga. v. Tennesen*, 390 N.J. Super. 123, 133 (App. Div. 2007)).

Plaintiff plausibly alleges such a representation. Before purchasing the Vehicle, Plaintiff asked whether it "was in running condition." Am. Compl. ¶ 20. Plaintiff then made the concern more specific: "You said you took this car in and trust that the car has no major issues. I'm trusting you on that." D.E. 16-10 at 16. Wineglass responded that he had personally driven the Vehicle twice and was "confident the car stands tall." *Id.*; Am. Compl. ¶¶ 21, 26. Wineglass added that the condition of these vehicles depended on "how they were cared for and serviced" and that the prior owner had "loved the car." Am. Compl. ¶ 28.

DCH argues that the phrase "stands tall" is nonactionable puffery because it is broad, subjective, and commendatory. Mot. at 8–11; Reply at 4–5. The Court disagrees. Viewed by itself, the phrase is undoubtedly imprecise. But Wineglass did not offer it as a free-floating slogan or generalized claim that the Vehicle was "wonderful" or "the best." He made the statement in direct response to Plaintiff's expressed concerns that the Vehicle might have "major issues."

*See* D.E. 16-10 at 17. Wineglass also presented his opinion as grounded in personal knowledge—he told Plaintiff that he had driven the Vehicle twice before expressing confidence in its condition. Read as a whole and in the light most favorable to Plaintiff, the exchange could reasonably be understood as an assurance that Wineglass's personal experience with the Vehicle had revealed no major mechanical problem.

*Clifford* is instructive. There, an out-of-state buyer specifically asked whether a used vehicle had rust, and the seller responded that it had "no rust." 2021 WL 416733, at *1. The New Jersey Appellate Division held that the statement was a material factual representation because the seller knew that the vehicle's condition mattered to the buyer's decision. *Id.* at *2–3. DCH is correct that "no rust" is more concrete than "stands tall," Reply at 4–5, but that difference does not warrant dismissal at this juncture. In the Court's view, Wineglass's statement, considered in its actual context, communicated a factual assurance about a matter he knew was important to Plaintiff. Plaintiff had expressly identified that matter—the existence of "major issues"—and Wineglass answered by invoking his own experience driving the Vehicle. At the pleading stage, the Court cannot strip the phrase from that context and treat it as generic sales praise. *See EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 352 (D.N.J. 2019).

Plaintiff also plausibly alleges that the assurance was false or misleading. The Vehicle was delivered on April 16, 2025, and Plaintiff alleges that he learned immediately that its engine had suffered a catastrophic failure. Am. Compl. ¶¶ 30–35. The exhibits attached to the Amended Complaint reflect that a Porsche dealership advised Plaintiff that "the engine is bad and needs [to be] replaced" and that the Vehicle should not be driven. D.E. 16-10 at 21–23. DCH emphasizes that Plaintiff does not dispute that Wineglass drove the Vehicle and does not allege precisely what internal component of the engine failed. Mot. at 11–12. Those arguments miss the mark. The

alleged misrepresentation is not that Wineglass drove the Vehicle; it is the assurance about the Vehicle's condition that Wineglass allegedly drew from that experience. And whether Plaintiff can ultimately prove the nature, timing, and severity of the engine defect is a matter for a developed record. The allegation that a Vehicle represented as having no apparent major issues arrived with an engine requiring replacement is sufficient to make the alleged falsity plausible.

These allegations also satisfy Rule 9(b)'s heightened pleading standard. Plaintiff identifies who made the representation—Wineglass, DCH's sales manager; when it was made—April 4, 2025; where and how it was made—in a text-message exchange; what was represented—that, based on Wineglass's personal experience driving the Vehicle, it "stands tall"; and why the representation was allegedly misleading—the Vehicle arrived less than two weeks later with an engine that allegedly required replacement. Am. Compl. ¶¶ 20–21, 26, 30–35; D.E. 16-10 at 16, 21–23. Those details place DCH on notice of the precise misconduct alleged. Rule 9(b) requires particularity, not proof.

*2. Ascertainable loss and causal connection*

Plaintiff also adequately alleges an ascertainable loss and a causal connection between that loss and DCH's alleged misrepresentation. Plaintiff paid a cash price of $28,432.44, and the transaction resulted in $31,677.51 being financed. Am. Compl. ¶¶ 13–14. He alleges that the Vehicle delivered in exchange had an engine requiring replacement and could not safely be driven. *Id.* ¶¶ 30–35; D.E. 16-10 at 21–23. Those allegations plausibly describe a measurable diminution in the Vehicle's value. Such a diminution is a cognizable ascertainable loss under the NJCFA. *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). Plaintiff must eventually support that loss with evidence demonstrating that it is real and capable of calculation, *id.* at 248–49, but he need not prove its precise amount at this stage of the case.

DCH's causation argument improperly focuses on whether its conduct caused the engine to fail. Mot. at 11–12. Plaintiff need not allege that DCH mechanically damaged the Vehicle—instead, he must allege that the unlawful practice caused his *economic loss*. *See Real v. Radir Wheels, Inc.*, 198 N.J. 511, 516–18 (2009) (reinstating an NJCFA award measured by the difference between the price paid for a used vehicle and the value of the materially defective vehicle delivered); *Clifford*, 2021 WL 416733, at *2–3 (explaining that inducement to purchase establishes the requisite nexus and that either out-of-pocket loss or diminished value may constitute ascertainable loss). Here, Plaintiff adequately pleads economic loss: he alleges that he expressed concern about major mechanical issues, received Wineglass's assurance, relied on that assurance in completing the purchase, and then received a Vehicle worth less than the amount he paid because its engine allegedly required replacement. Am. Compl. ¶¶ 34–41. Although reasonable reliance is not itself an element of an affirmative misrepresentation claim under the NJCFA, *see Clifford*, 2021 WL 416733, at *2, Plaintiff's allegation that Wineglass's assurance induced the purchase supplies a plausible causal link between the alleged misrepresentation and the alleged loss.

Nor do the Vehicle's "as is" status or Plaintiff's decision not to obtain a pre-purchase inspection defeat the claim at this stage. An "as is" provision does not waive a purchaser's statutory rights under the NJCFA. *Clifford*, 2021 WL 416733, at *3. And DCH cannot convert Plaintiff's alleged failure to investigate into a pleading-stage bar where the claim is that DCH affirmatively misrepresented the Vehicle's condition in response to Plaintiff's inquiry.[4]

[4] In a footnote, DCH argues that Plaintiff's Illinois residence and the Amended Complaint's failure to identify where the transaction occurred foreclose an NJCFA claim—*i.e.*, that Plaintiff lacks standing to bring an NJCFA claim. Mot. at 12 n.7; *see also* Reply at 3 n.1.

In sum, Plaintiff has plausibly alleged that DCH made a material affirmative misrepresentation, that Plaintiff suffered a measurable loss, and that the misrepresentation caused that loss. DCH's Motion is therefore **DENIED** as to Count II.[5]

**B. Rescission is a Remedy, Not a Cause of Action (Count III)**

Count III of the Amended Complaint is a rescission claim brought under N.J. Stat. Ann. § 2A:32-1. DCH is correct that N.J. Stat. Ann. § 2A:32-1 provides an equitable remedy for fraud, not a standalone substantive claim. Mot. at 13–14; *Alvez v. Verizon*, No. 08-3196, 2010 WL 2989988, at *11 (D.N.J. July 27, 2010); *Cooper v. Borough of Wenonah*, 977 F. Supp. 305, 313, 316 (D.N.J. Aug. 29, 1997). For this reason, courts in this District regularly dismiss standalone rescission claims with prejudice. *See, e.g.*, *Grant Jones Realty, LLC v. MW Cell REIT I LLC*, No. 24-00701, 2025 WL 1393635, at *4 (D.N.J. May 14, 2025) ("Rescission is not a standalone cause of action but an equitable remedy that depends on the existence of a valid underlying claim."). Accordingly, Count III is **DISMISSED *with prejudice*** as a standalone cause of action.[6]

DCH, however, does not identify an actual conflict between New Jersey and Illinois law, apply New Jersey's choice-of-law rules, or otherwise meaningfully develop that argument. Nor does Plaintiff's out-of-state residence categorically foreclose an NJCFA claim. In *Real*, the New Jersey Supreme Court held that the NJCFA applied where "an out-of-state consumer purchased a used automobile from an in-state seller via the internet." 198 N.J. at 514–15. The Court therefore declines to dismiss Count II on the present record, without deciding any choice-of-law issue that may later be properly presented.

[5] Because the affirmative misrepresentation theory is sufficient to sustain Count II, the Court need not decide whether Plaintiff has also adequately pleaded a knowing-omission or regulatory-violation theory.

[6] For clarity, nothing in the dismissal precludes Plaintiff from seeking rescission as a remedy if he ultimately prevails on a substantive claim that permits that relief.

## IV. CONCLUSION AND ORDER

For the reasons above,

**IT IS**, on this 22nd day of September, 2026,

**ORDERED** that Defendant's Motion to Dismiss, D.E. 23, is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Count II of the Amended Complaint, D.E. 16, shall **PROCEED**; and it is further

**ORDERED** that Count III of the Amended Complaint is **DISMISSED *with prejudice*** as to DCH; and it is finally

**ORDERED** that within **14 days** after entry of this Memorandum Order, Plaintiff shall **SHOW CAUSE** why the claims against Westlake Financial Services should not be dismissed from this action under Federal Rule of Civil Procedure 4(m).

Evelyn Padin, U.S.D.J.